Mark J. PAROLIN and John Mackin, on behalf of themselves and all others similarly situated, Plaintiffs

v.

CITY OF BOSTON, Defendant

No. CIV.A.01–12344–GAO.

United States District Court, D. Massachusetts.

July 28, 2004.

Terence E. Coles and David B. Rome, Pyle, Rome & Lichten, P.C., Boston, MA, for John Mackin, Mark J. Parolin, Plaintiffs.

John C. Foskett and Catherine S. Reidy, Deutsch, Williams, Brooks, DeRensis & Holland, P.C., Boston, MA, for City of Boston, Defendant.

### MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiffs are uniformed sergeants, lieutenants and captains of the City of Boston's police department and members of the Boston Police Superior Officers Federation (the "Union"). Their complaint against the City sets forth a single cause of action for unpaid overtime compensation, plus liquidated damages, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* (the "FLSA" or the "Act"). In particular, the complaint alleges:

> Since on and after three years preceding the filing of this complaint and continuing, the plaintiffs have at all times been entitled to receive overtime in accordance with the provisions of the

[FLSA] when they work in excess of forty-three (43) hours during a seven (7) day work period or one hundred seventy-one (171) hours during a twenty-eight [28] day work period.

In numerous workweeks during which they performed work for the City during this period, the plaintiffs have worked in excess of forty-three (43) hours during a seven (7) day work period or one hundred seventy-one (171) hours during a twenty-eight [28] day work period.

The City has repeatedly violated § 7 of the [FLSA] by employing the plaintiffs for work periods in excess of forty-three (43) hours during a seven (7) day work period or one hundred seventy-one (171) hours during a twenty-eight [28] day work period without compensating them at rates no less than time and one-half the proper regular hourly rates. Compl. ¶¶ 6, 7, 10.

In general, § 207(a) of the FLSA mandates the payment of overtime wages at a rate at least one and one-half times their regular hourly rate to employees engaged in commerce for a workweek longer than forty hours. *See* 29 U.S.C. § 207(a)(1). But the FLSA grants a partial exemption from this requirement to public agencies that employ law enforcement and fire protection personnel, allowing those employers to adopt work periods of longer than one week for the purpose of calculating unpaid overtime. *See id.* § 207(k). The FLSA does so "in recognition of the special needs of governments in the area of public safety and the unusually long hours that public safety employees must spend on duty." S.Rep. No. 99–159, at 5 (1985), *reprinted in* 1985 U.S.C.C.A.N. 651, 653. A law enforcement employer can elect to use a work period which ranges from seven to twenty-eight days. 29 U.S.C. § 207(k). For a work period of twenty-eight days, no overtime compensation is required until the number of hours worked exceeds 171 hours. 29 U.S.C. § 207(k)(1); 29 C.F.R. § 553.230(b). For a work period of seven days, no overtime compensation is required until the number of hours worked exceeds 43 hours. § 207(k)(2); 29 C.F.R. § 553.230(c).

The complaint alleged that the City had failed "to include regular amounts received [by the plaintiffs] from the City's educational incentive plan, transition career awards program, night differentials, assignment differentials and other regular elements of compensation in the superior officers' base hourly rate for purposes of determining overtime, in willful violation of . . . the Act since on and after three (3) years preceding the filing of this complaint and continuing." Compl. ¶ 1. From this allegation and a reading of the complaint as a whole, it is clear that the fundamental gist of the plaintiffs' claim was that the City had miscalculated the "regular" hourly rate under § 207(e) of the Act (defining "regular rate") by failing to include aspects of the plaintiffs' compensation—various specified "differentials" or other cash entitlements—in that calculation, with the consequence that the overtime multiplier was applied to the wrong base, to the plaintiffs' disadvantage and economic damage. The plaintiffs alleged that the "City has no good faith or reasonable ground for believing that it was justified in failing to include the various additional elements of compensation in the regular rate for purposes of calculating overtime in work periods during which the plaintiffs worked in excess of forty-three (43) hours during a seven (7) day work period or one hundred seventy-one (171) hours during a twenty-eight [28] day work period." Compl. ¶ 11. In support of this allegation, the plaintiffs pointed to the City's history of having ignored similar claims from the police patrol officers and their union. The complaint prayed for a damage award equal to the amount of unpaid overtime, liquidated

damages, and attorneys' fees and costs of the action.

As the portions of the complaint quoted above demonstrate, the plaintiffs claimed they were "entitled to receive overtime in accordance with the provisions of the Act when they work in excess of forty-three (43) hours during a seven (7) day work period or one hundred seventy-one (171) hours during a twenty-eight [28] day work period." Compl. ¶ 6. In several other places in the complaint, the plaintiffs repeat that standard. See Compl. ¶¶ 7, 10, and 11. The complaint never expressly asserted that the plaintiffs regularly worked either a seven-day work period or a twenty-eight day work period—or a work period of any other specified duration. It simply asserted that they were entitled to overtime when they worked more than 43 hours in a seven-day work period, or more than 171 hours in a twenty-eight day work period. This approach tracked the structure of the public safety exemption as set forth in § 207(k). It bears emphasizing that the focus of the complaint was not on a failure to pay any overtime at all, but rather on the failure by the City properly to calculate the overtime due, because of the exclusion of various differentials and other pecuniary benefits due the plaintiffs from the base, or "regular," hourly rate.

When the complaint was filed, the last word from the First Circuit on the subject of overtime pay for municipal public safety employees was to be found in Martin v. Coventry Fire Dist., 981 F.2d 1358 (1st Cir.1992). That case involved a question about how to measure the statutory damages due where a municipal fire district acknowledged it had not paid overtime to its fire fighter employees. The Secretary of Labor argued that since the fire district had not taken advantage of the § 207(k) exception to the general rule, overtime should be calculated the usual way under § 207(a), at time and a half for hours above 40 in a given workweek. The court disagreed, holding that the § 207(k) exemption embodied Congress's recognition that the "normal" workweek for certain municipal employees, such as fire fighters and police officers, was often different from a straight 40–hour week because of the work schedules peculiar to those jobs, so that any computation of overtime should be done in reference to the fire fighters' "normal" workweek—up to 53 hours in a week. That the present plaintiffs framed their claim and their request for relief in terms of the § 207(k) overtime threshold for law enforcement employees—43 hours in a seven-day period—was consistent with, and understandable in light of, the holding in Coventry.

At the parties' request, this case was bifurcated into a liability stage (Stage 1) and a damages stage (Stage 2). In Stage 1, the parties entered into a series of stipulations that resolved the key liability issues. In their first stipulation, the parties said the following:

The parties stipulate for purposes of the FLSA only that on and after three years preceding the filing of the Complaint and continuing until July 6, 2002, Plaintiffs have at all times been entitled to receive overtime in accordance with the provisions of the FLSA when they work in excess of forty-three (43) hours during a seven (7) day work period because during the aforementioned time period the Plaintiffs were not paid 'on a salary basis' as that phrase is defined in 29 C.F.R. § 541.118(a) and, therefore, Plaintiffs are not exempt employees under 29 U.S.C. § 213(a)(1). The parties do not stipulate that Plaintiffs are not exempt employees under 29 U.S.C. § 213(a)(1) based on the duties Plaintiffs performed during the aforementioned time period. The parties stipulate that on July 6, 2002, the City of Boston

adopted a partial public safety exemption as set forth in 29 U.S.C. § 207(k), after which point Plaintiffs have been entitled to receive overtime in accordance with the provisions of the FLSA when they work in excess of one hundred seventy-one (171) hours during a twenty-eight (28) day period.

The parties further stipulated that certain differentials and other items should have been included in the "regular rate" for purposes of an overtime computation, while other items should not have been.

The parties thereafter entered into a second stipulation, supplementing the first. In the second stipulation, the parties agreed that plaintiffs "who perform 'strike details' are required to be paid the overtime rate required by 29 U.S.C. § 207(a)(1) and that the City of Boston has not done so."

The plaintiffs then moved for partial summary judgment as to liability on the basis of the two stipulations. The City assented to the allowance of the motion, and it was allowed. The effect of the allowance of the partial summary judgment motion was to establish the fact (though not the amount) of the City's liability in the following respects:

(1) From a date three years prior to the filing of the Complaint to July 6, 2002, the City was liable to pay overtime to plaintiffs who worked more that 43 hours in a seven-day work period;

(2) After July 6, 2002, the City was liable to pay overtime to plaintiffs who worked more than 171 hours in a twenty-eight day work period;

(3) The City was required (without reference to time period) to pay overtime to plaintiffs who worked "strike details" in accordance with § 207(a)(1)—that is, for hours in excess of 40 worked in any given workweek.

It was also established that the City was bound to include certain differentials and other items of compensation in the plaintiffs' "regular rate" of pay for purposes of performing the overtime calculation, but the details of those matters are not germane to the present issue.

In their first stipulation, the parties had expressly indicated that they had not reached agreement as to whether a "lunch differential" should be included in the "regular rate" or not. After partial summary judgment as to liability was granted on the basis of the assented-to motion described above, the plaintiffs moved for summary judgment on the lunch differential issue, arguing that it should be included in the regular rate of pay. The City opposed the motion. After hearing, the Court denied the plaintiffs' motion, ruling that the lunch differential was not equivalent to a shift differential and that the test for whether a lunch break was "time worked" or not was the "predominant benefit" test announced in relevant Supreme Court precedents, rather than the "completely relieved from duty" standard subsequently promulgated by the Department of Labor. The "predominant benefit" test required resolution of disputed factual questions, precluding summary judgment. After the denial of the summary judgment motion on the lunch differential issue, the parties resolved that issue by a third stipulation, which provided that "Lieutenants and Sergeants assigned to the day shift were entitled to have 3.15% of their base compensation included in the 'regular rate' for purposes of determining the amount of overtime pay to which they are entitled under the FLSA."

At this point the parties regarded Stage 1 of the litigation to have been completed, with liability on the part of the City established in accordance with the parties' stipulations and the Court's consonant grant of partial summary judgment as to liability. The parties therefore moved to Stage

by filing cross-motions for summary judgment as to damages. Their motions raised three issues. The first was raised by both motions; each motion raised an additional (and different) one.

The issue jointly raised was whether the amount of overtime due the plaintiffs should be calculated by reference to hours worked in excess of 43 (the defendant's contention) or hours worked in excess of 40 (the plaintiffs'). The plaintiffs argued that a 40–hour benchmark should be used notwithstanding that both the complaint and the principal stipulation entered into by the parties (the first one) endorsed the proposition that the plaintiffs were entitled to overtime for hours worked in excess of 43 in a seven-day period.

The "regular work week" theory of the *Coventry* case would call for use of the 43–hour standard, but the plaintiffs argued in support of their summary judgment motion that *Coventry* was not controlling, for two reasons. In their first brief in support of summary judgment in their favor, they argued that *Coventry* was distinguishable. Relying on a case from another district within this circuit, *Maldonado v. Administracion de Correccion (Div. Instituciones Penales)*, No. 90–2186(JP), 1993 WL 269650 (D.P.R. July 1, 1993), the plaintiffs argued that the key to the availability of the § 207(k) exemption was whether the City had chosen to avail itself of the exemption and calculate overtime in accordance with it. *Id.* at *3. Following a line of argument outlined in *Maldonado,* the plaintiffs asserted that the fire district in *Coventry* had adopted the exemption, but simply had not paid the fire fighters in accordance with it. In such circumstances, they say, it was proper to measure the damages by the standard set by § 207(k).

But here, they add, the City did not choose to use the exemption before July 6, 2002, so this case is distinguishable from *Coventry* on its facts.

This argument misrepresents *Coventry*'s analysis. Whether or not the fire district had chosen to avail itself of the exemption played no part in the court's reasoning. In fact, for all that appears, the fire district had not made such a choice, but rather had simply failed to pay overtime at all. *See Coventry,* 981 F.2d at 1359, 1360. In any event, the court did not address the distinction sought to be made—between an employer that "chooses" the exemption and one that does not—and certainly did not rely on any such distinction in formulating its holding. With all respect, the *Maldonado* court was mistaken to read such a distinction into the *Coventry* holding.[1]

After the cross-motions for summary judgment had been filed by the parties, but before they were scheduled for hearing, the First Circuit issued its opinion in *O'Brien v. Town of Agawam,* 350 F.3d 279 (2003), in which it again addressed the construction of § 207(k)'s public safety exemption. The court held that the exemption would apply when a municipal employer had "adopted a qualifying 'work period'" for employees engaged in fire protection or law enforcement. *Id.* at 290. A work period would "qualify" if it was an "established and regularly recurring period of work" at least seven days long and not more than twenty-eight days long. *Id.* at 291 (citing 29 C.F.R. § 553.224(a)). Some of the employees involved in the *O'Brien* case were police officers who, like many of the plaintiffs in this case, worked a regular schedule of four days on duty

---

1. The *Maldonado* court stated: "It is clear that where a covered employer does not avail itself of the Section 7(k) exemption it must compensate its employees under the provisions of Section 7(a)." 1993 WL 269650 at *3. What seems clear is that *Coventry* held exactly the opposite.

followed by two days off duty. This suggested a work period of six days, not seven, the court said, and in the absence of evidence that the Town of Agawam had otherwise adopted a work period of a different length, a conclusion was not warranted that the § 207(k) exemption was available.[2]

The plaintiffs immediately called this Court's attention to the *O'Brien* case, urging that it required a conclusion here that the four-on, two-off cycle of most of the plaintiffs amounts to a regular and recurring work period of less than seven days, making the exemption unavailable.[3] Consequently, they urged, the proper method of computation was the one established under § 207(a)(1)—time and a half after 40 hours per week. This second argument rests on the proposition that this Court should disregard *Coventry* in light of *O'Brien*. Unfortunately, the *O'Brien* opinion does not discuss the implications of either the holding or reasoning of *Coventry*, so it is not possible to know whether the *O'Brien* court thought the earlier case, though apparently inconsistent with the *O'Brien* outcome, could be distinguished, or whether the later panel thought that there was no putative inconsistency that needed to be addressed.

In *Coventry*, the court reasoned that the damages for failure to pay overtime should be the amount that would have been paid if overtime properly had been paid in the first instance. If the fire district had paid its fire fighters overtime, it would have done so, consistently with the public safety exemption, for hours in excess of 53 in any given week. The plaintiffs were entitled therefore to recover what should have been paid—overtime for hours over 53 (plus an equal amount in statutory liquidated damages). *Coventry*, 981 F.2d at 1361. The court further concluded that the effect of § 207(k) was to extend the "normal working week" for public safety employees from the usual 40 hours (as established by § 207(a)(1)) to 53 hours in the case of fire fighters. *Id.* at 1360. Application of that principle to police would mean that a "normal working week" was 43 hours in a seven-day period, with overtime to be paid for hours in excess of 43. *See* 29 C.F.R. § 553.230(c).

The *Coventry* court did not consider the question how the length of a "work period" is to be determined. It did not, as the *O'Brien* court did, look at actual patterns of duty assignments to see what length of work period might be inferred. Rather, the *Coventry* court's approach was more *a priori*. The § 207(k) exemption was intended to recognize the irregular working weeks of public safety employees and to alleviate the impact of the FLSA on their employers. *Coventry*, 981 F.2d at 1361. So, Congress created a "special fire department overtime subsection" whereby fire fighters were entitled to overtime when they worked more than 53 hours in a week. *Id.* If the *Coventry* court were deciding this case, it might say, *mutatis mutandis*, that the police officers were due to be paid overtime when they worked more than 43 hours in a week. That is exactly how the plaintiffs here pled their

---

2. The court recognized that a "work period" need not coincide with a "duty cycle," *see* 29 C.F.R. § 553.224(a), but noted that there was no evidence that Agawam had distinguished between the two concepts. For all that appeared, the "four-on, two-off" duty cycle was the "established and regularly recurring" work period for the affected employees.

3. A minority of the plaintiffs are regularly assigned to a "five-on, two-off" schedule— essentially a Monday through Friday work week, with Saturdays and Sundays off. If this "duty cycle" is the same as the "work period" for these employees, it plainly qualifies as a seven-day period, and, under *O'Brien*'s reasoning, the exemption would be available.

claims, and the theory is similarly reflected in the stipulations they entered into with the City in this case. In neither their pleading nor the stipulations did the plaintiffs propose that there was a different "work period" for those plaintiffs assigned to a six-day duty cycle and those assigned to seven-day cycle.

The *O'Brien* court, in contrast, looked for evidence in the record that the Agawam police were subject to a "work period" of at least seven days.[4] Since the only

4. The statute itself does not define the term "work period." A regulation adopted by the Department of Labor defines the term as follows:

"As used in section [207(k)], the term 'work period' refers to any established and regularly recurring period of work which, under the terms of the Act and legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days. Except for this limitation, the work period can be of any length, and it need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day...."

29 C.F.R. § 553.224(a).

There are two pertinent observations that can be made about this provision. First, for purposes of the public safety exemption, an employee's "work period" cannot be established at less than a week. The *O'Brien* court interpreted this limitation to mean that if there were a work period of less than seven days actually established, then the exemption could not be applied. There is another possible understanding of the seven-day minimum work period, and that is that it applies not just to the exemption, but to the FLSA generally. In other words, for purposes of the Act, no "work period" may be established that is shorter than a week.

As a general matter, it is settled that the week is the unit of time under § 207 within which to distinguish regular pay from overtime. *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 579, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). The basic obligation to pay overtime is couched in terms of the "*work-week.*" 29 U.S.C. § 207(a) (emphasis supplied). An employer of law enforcement personnel may continue to use the week as the basic work period as contemplated generally by the Act, or it may choose to expand the basic work period for those employees for any period up to twenty-eight days in order to mitigate the effect of irregular duty schedules and consequently the number of hours worked in any given week by such employees. There is nothing in either the statute or the regulations adopted pursuant to it that suggests that a "work period" for purposes of determining overtime may be less than a week. In other words, the "default" work period for purposes of the Act generally, and § 207(k) particularly, is a week, but under § 207(k) an employer may adopt a longer period, not to exceed twenty-eight days.

Setting the week as the minimum permissible work period for purposes of the overtime requirements of the Act supports the policy objective of the Act, as the following illustration demonstrates: The number of hours permitted in any period of less than twenty-eight days before overtime is required is to be determined by applying the ratio of permissible "regular time" hours set for a twenty-eight-day period. For law enforcement personnel, overtime is payable for hours in excess of 171 in twenty-eight days. 29 C.F.R. § 553.503(b), (c). The resulting ratio (171/28), applied to a seven-day period, yields an overtime breakpoint of 43 hours (after rounding). *Id.* For a conventional five days on, two days off week, 43 hours averages to 8.6 hours per day over the five working days. If the 171/28 ratio were to be applied to a period shorter than seven days—say the six-day, four-on, two-off duty cycle involved in *O'Brien,* for example—the overtime breakpoint would fall from 43 hours to 37 hours (after rounding), but the daily average over the four working days would rise to 9.25 hours per day. Setting a limit on how *short* a work period can be prevents employers from trying to squeeze more non-overtime hours into the average actual working day. So, whatever the duty cycle may call for in terms of days on and off, overtime is due for law enforcement personnel for more than 43 hours in a *week.* For a four-on, two-off cycle (applicable to many of the plaintiffs in this case), regarding the seven-day week as the "work period" operates to the benefit of an employee. The employee works days 1, 2, 3, and 4; is off duty days 5 and 6; and begins the next duty cycle on day 7. He thus works five days (days 1, 2, 3, 4, and 7) in the full week. He is due overtime in excess of 43 hours in that week, even though the week straddles two duty cycles. The average day that can be worked before overtime,

evidence available (the six-day duty cycle) indicated a work period of less than seven days, the court concluded that the parameters of the § 207(k) exemption were not satisfied, and the exemption was therefore unavailable. The consequence was a computation based on a forty-hour work week, as prescribed by § 207(a).

There is a palpable incompatibility between the two approaches. It cannot both be true that (1) *a priori*, a law enforcement employee's "normal work week" for purposes of overtime computation is 43 hours, and (2) in an individual case, there must be a factual inquiry to determine the length of the regularly recurring "work period" established for particular workers. If (2) is correct, (1) must be ignored. If (1) is correct, (2) is superfluous at best, and inconsistent at worst.

■■■ It is this Court's responsibility conscientiously to apply settled circuit law. But when the circuit decisions diverge down different paths as they do in this case, this Court is "sorry [it cannot] travel both and be one traveler."[5] It is also settled circuit law that one panel may not overrule a prior panel decision in the absence of some intervening change in the statute or superior precedential authority. *See Arecibo Cmty. Health Care, Inc. v. Commonwealth of Puerto Rico*, 270 F.3d 17, 22–23 (1st Cir.2001). *O'Brien* did not purport to overrule *Coventry*, and the simple fact that it is a later decision is not a reason to give it preferred effect.

■■■ The City suggests a solution for this case only: decide the matter not by choosing between incompatible circuit directives, but rather by holding the plaintiffs to their pleadings and their voluntarily concluded stipulations. It is as satisfactory a solution as any. It is not unfair to the plaintiffs to observe the lines they themselves have drawn, *see Morales Feliciano v. Rullan*, 303 F.3d 1, 8 (1st Cir.2002) (stipulations entered into by a party during an earlier stage of the same litigation are binding on that party), and doing so will lead to a conclusion of the case at this level, providing an opportunity for an appeal and an opportunity for reexamination by the circuit of the approach to be taken in adjudicating these issues. The *O'Brien* case may permit a different result, but it does not require it. The proper measure to be applied in this case is 43 hours in a workweek, not 40.

■■■ The other two issues raised by the cross-motions for summary judgment are easily disposed of. The first of these pertains to the availability of liquidated damages.

The Act provides: "Any employer who violates the provisions of . . . section 207 of this title shall be liable to the . . . employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However,

---

over the five days, is 8.6 hours, instead of a potential 9.25. This interpretation is not only fully in line with the evident legislative purpose, but it also does not require denying public employers of the benefit of the exemption entirely.

The second observation is that the inference drawn by the *O'Brien* court from the available evidence cannot be drawn in this case. In *O'Brien*, the court found that the only record evidence of the length of an established work period was the length of the duty cycle, and relying on that solitary indication, inferred

that the work period coincided with the duty cycle. As the regulation quoted above indicates, the "work period" need not coincide either with any duty cycle nor with any pay period, although, of course, it may. In this case, even those plaintiffs who work a six-day duty cycle have a seven-day pay period, so it is impossible to rely on either as establishing a work period. Either might, but neither necessarily does.

**5.** Robert Frost, "The Road Not Taken."

an employer may be able to avoid having to pay liquidated damages if it can show to the court's satisfaction that the act or omission giving rise to the action for unpaid overtime compensation "was in good faith and that [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." *Id.* § 260.

Here, the City has made no such showing. The City has no "good faith" defense for its continued exclusion of shift differentials and other elements of compensation from the plaintiffs' hourly rate for the purposes of calculating overtime, regardless of whether it believed overtime compensation should be based on a 43–versus a 40–hour workweek. The record indicates that the issue of the proper calculation of the "regular rate" was repeatedly brought to the City's attention. Until this case and similar cases on behalf of other police employees were brought, however, the City persisted in omitting the differentials and other compensation from its overtime calculations. Liquidated damages should be awarded in accordance with 29 U.S.C. § 216(b).

 The other issue raised pertains to the applicable statute of limitations. The three-year statute of limitations for willful violations of the FLSA in 29 U.S.C. § 255(a) is applicable. The City is correct that for each individual plaintiff who has "opted in" to the plaintiff class, the period is measured from the date the particular plaintiff's written consent was filed with the Court. 29 U.S.C. § 256(b).

For all the foregoing reasons, the parties' cross-motions for summary judgment as to damages are both granted in part and denied in part. The amount of overtime compensation damages owed to the plaintiffs for the period three years preceding the filing of the complaint and continuing to July 6, 2002, shall be calculated based on a 43–hour workweek, plus an

additional equal amount as liquidated damages, except that unpaid overtime compensation for those plaintiffs who worked "strike details" shall be calculated based on a 40–hour workweek, plus an additional equal amount as liquidated damages.

The parties are directed to file a schedule of damages for each plaintiff consistent with these rulings within twenty-eight days of the date of this opinion.

It is SO ORDERED.