**Richard DUPLESSE, et al.**

v.

**COUNTY OF LOS ANGELES, et al.**

**No. CV 08–5819 AHM (FMOx).**

United States District Court,
C.D. California.

May 18, 2010.

Justin P. Karczag, Nathan T. Lowery, Thomas Foley, Foley Bezek Behle And Curtis LLP, Santa Barbara, CA, Richard E. Donahoo, Thomas John Welch, Donahoo and Associates, Tustin, CA, for Plaintiffs.

Deborah C. Saxe, Ruth M. Holt, Jones Day, Los Angeles, CA, for Defendant.

**Proceedings:** IN CHAMBERS
(No Proceedings Held)

A. HOWARD MATZ, District Judge.

Stephen Montes, Deputy Clerk.

Plaintiffs Richard Duplesse and Tom Fahrny (collectively, "Plaintiffs") brought this case as a collective action pursuant to section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiffs, who are fire fighters employed by the County of Los Angeles ("County"), allege that the County is violating the FLSA by failing to pay them overtime compensation at one and one-half times the "regular rate of pay" as defined by the FLSA. Specifically, they allege that the County is required to include certain non-discretionary bonuses given to fire fighters who work in certain positions in the "regular rate of pay" for purposes of calculating overtime. Because the Court finds that the manner in which the County determines Plaintiffs' regular rate of pay and calculates overtime does not violate the FLSA, the Court GRANTS Defendant's Motion for Summary Judgment.[1]

---

1. Docket No. 39.

## I. FACTS

The relevant facts are not in dispute. All 82 class members are regularly assigned to paramedic post ("Post Paramedic") positions or to the Hazardous Materials ("Haz–Mat") Task Force. They are employed as "Item 0199" Fire Fighters pursuant to the Los Angeles County Code and a Memorandum of Understanding ("MOU") between the Fire Department and Los Angeles County Firefighters 1014, IAFF, AFCL–CIO, which represents them. Item 0199 Fire Fighters are also called "56 Hour Fire Fighters" because they are regularly assigned to a work schedule that averages 56 hours per week. (SUF ¶ 22.)

In accordance with a stipulation of the parties, the Court conditionally certified a collective action consisting of all persons employed by the County of Los Angeles pursuant to the MOU as Item 0199 Fire Fighters who were assigned for at least 30 consecutive calendar days between September 9, 2005 and May 12, 2009, to either (1) a post-paramedic position, (2) the Hazardous Materials Task Force, or (2) an Urban Search and Rescue Position. (*See* Docket No. 26.) Of the 947 qualifying employees, 82 opted in to the class.[2]

Pursuant to the MOU, Plaintiffs' "Work Period" is 24 consecutive days, consisting of eight 24–hour shifts that run from 8:00 a.m. to 8:00 a.m. the following day. (SUF ¶¶ 23, 29–30.) Thus, there are 192 regularly scheduled work hours in each 24–day Work Period (8 shifts × 24 hours/shift = 192 hours).

---

**2.** None of the employees who opted in to the class worked as 0199 Fire Fighters in an Urban Search and Rescue position during the class period. (Motion at 4.)

**3.** In addition to bonuses provided by the MOU, Item 0199 Fire Fighters may be enti-

Plaintiffs' pay is governed by the MOU. For Item 0199 Fire Fighters, the MOU provides a base monthly salary range of $4,260.74 to $6,229.18 depending on the number of salary "steps" the employee has earned based on tenure and satisfactory annual reviews (Williams Decl. ¶ 25 and Exh. 3 [Article 9 § 1 of Amendment No. 1 to MOU, salary effective August 1, 2008].) This starting salary is referred to as the "Salary Schedule and Level" or "grid salary." The grid salary can be increased by adding what the MOU refers to as "bonuses." These "bonuses" come in the form of an increase in the employee's salary by a certain number of "salary schedules" or "levels."[3] For example, Item 0199 Fire Fighters are entitled to receive a monthly salary increase of 12 standard salary levels for completing an annual "Wellness/Fitness for Life Program." (*Id.* ¶ 30 and Exh. 3 [Article 9 § 13 of Amendment No. 1 to MOU, salary effective August 1, 2008].) These bonuses are designed as either "Base Rate" or "Other Base" bonuses, and are included in an employee's monthly salary. (SUF ¶ 45.)

The specific "bonuses" that are at the center of this dispute are for (1) Item 0199 Fire Fighters who are certified as paramedics and regularly assigned to Post Paramedic Positions; and (2) qualified Item 0199 Fire Fighters who are regularly assigned to Hazardous Material Task Force ("Haz–Mat") positions. Specifically:

● *Post–Paramedic bonus*—Pursuant to Article 9 § 6.a of the MOU, Item 0199 Fire Fighters who are certified as paramedics and are regularly assigned to Post Paramedic Positions are entitled

---

tled to receive "Longevity bonuses" pursuant to County Code § 6.10.100. Longevity bonuses are available after 10 years of aggregate service, and provide for increases in monthly salary at 15 and 20 years of service.

to a "Post Paramedic Bonus" that increases their monthly "grid salaries" by six "Salary Schedules" (which is the equivalent of 66 salary "levels"), as well as "a lump sum of $400 upon each recertification." (SUF ¶ 42.) However, Item 0199 Fire Fighters who are certified paramedics but who are not regularly assigned to Post Paramedic Positions do not receive the Post Paramedic "bonus." (*Id.* ¶ 43.)

- *Haz–Mat bonus*—Pursuant to Article 9 § 9 of the MOU, Item 0199 Fire Fighters who have received certification in one of four specified subjects and are assigned to a designated Haz–Mat position receive a "Safety Personnel Bonus" which provides a salary increase of 20 standard salary levels. (SUF ¶ 44.) However, Item 0199 Fire Fighters who are certified in one of the four specified subjects and are not regularly assigned to Haz–Mat positions do not receive the salary increase. (*Id.*)

The Post–Paramedic Bonus is designated as an "Other Base" bonus, and is thus included in the "normal monthly salaries" of Item 0199 Fire Fighters. (SUF ¶¶ 45–46.) The MOU specifies that the Safety Personnel Bonus or Haz–Mat bonus is to "be considered as wages for all purposes." (MOU Article 9 § 9.)

The County's automated timekeeping system automatically calculates Item 0199 Fire Fighter monthly salaries based on personnel data entered by the Fire Department. (SUF ¶ 48.) The timekeeping system starts with the grid salary on the Salary Table that is associated with the employee's classification and tenure. Salary levels are added to the grid salary depending on whether the employee is entitled to receive one of the "Base Rate" or "Other Rate" bonuses. (*Id.*)

To illustrate how these bonuses work, Duplesse's current salary is calculated as follows. Duplesse is at the top "step" of the salary range for Item 0199 Fire Fighters, which as of August 1, 2008, is at the 5th Step of the Salary Schedule and Level, and "91G" on the Salary Table, which is $6,229.18 per month. This is his "grid salary." His grid salary is augmented by: (1) a 10 Year Longevity "bonus" of 11 salary levels; (2) an EMT "bonus" (for having obtained Emergency Medical Technician certification) of 44 salary levels; (3) the Wellness "bonus" of 12 salary levels; and (4) the Post Paramedic Bonus of 66 salary levels. (SUF ¶ 49.) Thus, Duplesse's "bonuses" provide him with a total of 133 salary level increases (11 + 44 + 12 + 66). The County's automated timekeeping system automatically adds 133 salary levels to reach the 5th Step of the Salary Schedule and Level and "103(H)" on the Salary Table, which brings Duplesse's total monthly salary to $8,645.91. (*Id.*)

The monthly salary is intended to compensate Item 0199 Fire Fighters for all hours in their regularly-scheduled shifts (*i.e.,* the 8 shifts per 24–day Work Period in their regular schedule) in a month. (SUF ¶¶ 51, 55.) Plaintiffs receive their full monthly salaries for any month in which they work and/or use paid benefit hours for all of the shifts in their regular schedules. If Plaintiffs take unpaid time off, their monthly salaries are pro-rated. (*Id.* ¶ 53.)

**Pay for Unscheduled Hours**

Fire Fighters sometimes work unscheduled hours. Unscheduled hours can occur, for example, when the Fire Department and/or State agencies are fighting fires on multiple fronts throughout the County or State (often during fire season). (SUF ¶ 58.) Fire Fighters may be required to work unscheduled shifts pursu-

ant to a mandatory "recall" when the need for Item 0199 Fire Fighters exceeds the number of Item 1099 Fire Fighters who have indicated availability for a particular shift. (*Id.* ¶ 61.) When an Item 0199 Fire Fighter works an unscheduled shift (*i.e.*, any shift other than one of the 8 shifts that he is scheduled to work in a given 24–day Work period), he receives "straight time" pay for each hour worked. Plaintiffs' "straight time rate" refers to their monthly salary divided by 243.6 (the average number of hours that Plaintiffs are scheduled to work in a month). (*Id.* ¶ 54.) If Plaintiffs work unscheduled shifts in their regular classification and position (*i.e.*, in a Post Paramedic position or Haz–Mat position), they are entitled to straight-time pay for each unscheduled hour worked at the hourly rate calculated according to their monthly salary. (SUF ¶ 77.) Thus, for example, if Duplesse (who has a current monthly salary of $8,645.91) works unscheduled hours in a Post Paramedic position, he will be compensated at a "straight time" rate of $35,492 per hour ($8,645.91 divided by 243.6). (*Id.* ¶ 78.)

Depending on the needs of the Fire Department, Item 0199 Fire Fighters who are regularly assigned to Post Paramedic positions or Haz–Mat positions may be assigned to work unscheduled hours in non-Post Paramedic or non-Haz–Mat positions (hereinafter "Regular Fire Fighter positions"). (SUF ¶¶ 62, 63) In such cases, the County compensates these fire fighters at a straight-time hourly rate that is equal to the straight-time rate to which they would be entitled if they were not receiving the Post Paramedic or Haz–Mat bonus. (*Id.* ¶ 80.)[4] For example, if Duplesse

works an unscheduled shift in a Regular Fire Fighter position, he is compensated at a straight-time hourly rate of $30,163 for each hour worked. This figure is arrived at by taking Duplesse's starting "grid salary" ($6,229.18) and adding the (1) 10 Year Longevity bonus; (2) the EMT bonus; and (3) the Wellness bonus, and dividing it by 243.6. (*Id.* ¶ 81.) The Post–Paramedic bonus is not added to Duplesse's total salary in this case. (*Id.*)

### Calculation of Overtime

#### How Overtime is Calculated for Hours 183 through 192

As explained above, in each 24–day Work Period, Item 0199 Fire Fighters are scheduled for a total of 192 hours (8 shifts × 24 (hours/shift)=192 hours). For hours 183 through 192, Fire Fighters receive a premium payment equal to one-half (.5) of the straight-time hourly rate for their regularly-scheduled shifts multiplied by ten (*i.e.*, for each of the ten hours). (SUF ¶ 85.)

For example, during the 24–day Work Period ending January 13, 2008, Duplesse was earning a total salary (including all applicable bonuses) of $8,393.82.[5] (*Id.* ¶ 87; Saxe Decl. Exh. 3–166 [Direct Deposit Form].) Thus, Duplesse's "straight time hourly rate" at this time was $34,457 ($8,393.82 divided by 243.6). For hours 183 through 192, he received an additional hourly premium of $17.229 (equal to one half of his straight time hourly rate). Thus, for hours 183 through 192, he received a total premium payment of $172.29

---

4. Plaintiffs purport to dispute this fact; however, what they dispute is whether the City *should* be calculating unscheduled pay in this manner. There is no dispute that this is how the County currently calculates the "straight time hourly rate" when Plaintiffs work in

non-Post Paramedic or non-Haz–Mat positions.

5. This monthly salary is lower than his current monthly salary, because Duplesse received a raise effective August 1, 2008.

($17,229 × 10 hours), in addition to the $344.58 regular payment. (*Id.*)

**How Overtime is Calculated for Hours Worked in Excess of 192**

When an Item 0199 Fire Fighter works in excess of 192 hours in a given Work Period, the County pays him or her an additional "premium pay." However, this "premium pay" is not calculated in the same way as the premium pay that is provided for the first 10 hours worked in excess of 182 hours. Rather, the premium is equal to one-half (.5) times the *average* straight time hourly rate. This is calculated by adding all of the employee's non-overtime earnings (including vacation pay, holiday pay and other pay for time not worked) for the Work Period and dividing the total by the number of hours "worked" (as that term is defined in the MOU) in the Work Period. (SUF ¶ 90.)

For example, during the 24–day Work Period ending July 23, 2008, Duplesse was compensated for the following shifts;

- 6 Regularly–Scheduled Shifts (144 hours) at $34.457/hour
- 4 Unscheduled Post–Paramedic Shifts (96) hours at $34.457/hour
- 6 Unscheduled Regular Fire Fighter shifts (144 hours) at $29.283/hour
- 1 Sick Leave shift (24 hours) at $34.457/hour
- 1 Holiday shift (24 hours) at $34.457/ hour

Thus, during this Work Period, Duplesse was compensated for a total of 432 hours. For hours 183 through 192, Duplesse was compensated a premium payment of $172.29, which is equal to one-half (.5) of the straight-time hourly rate of $34,457 for his regularly-scheduled shifts multiplied by ten. For hours that Duplesse worked in excess of 192, however, the County calculated the weighted "average hourly rate of pay" for this work period by adding the total non-overtime earnings (including pay for sick leave and holiday) ($14,140,368) and dividing it by the total number of hours compensated during the Work Period (432). (SUF ¶ 91.) The "average hourly rate of pay" thus came to $32,732. Duplesse was compensated an additional hourly amount equal to one-half of $32,732, or $16,366 for each of the 240 hours worked in excess of 192 hours for this Work Period, which came to a total of $3,927.84. (*Id.* ¶ 92.) It is this method of calculation, for hours worked in excess of 192, which Plaintiffs contend contravenes the FLSA.

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing

the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.; see also Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

Simply because the facts are undisputed does not make summary judgment appropriate. Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper. *Braxton–Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir.1985).

## III. DISCUSSION

Plaintiffs argue two reasons why the County's method for calculating overtime violates the FLSA. First, Plaintiffs argue that the County is required to include the Post Paramedic and Haz–Mat bonuses in their "regular rate" of pay, even when Plaintiffs are being compensated for working in non-Post Paramedic or Haz–Mat positions. Second, Plaintiffs argue that by failing to include those bonuses in the regular rate, the County's use of the "weighted average" method of determining the "regular rate" is improper.

### A. The FLSA does not Require that the Post–Paramedic and Haz–Mat "Bonuses" be Included in Plaintiffs' "Regular Rate" When Plaintiffs are not Working in Post–Paramedic or Haz–Mat Positions.

The FLSA requires that Plaintiffs be compensated for all hours worked in excess of 182 at "a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). The FLSA defines "regular rate" to include "all remuneration for em-

ployment paid to, or on behalf of, the employee" unless it falls under one of the eight expressly provided exceptions listed in the statute, none of which is applicable here. 29 U.S.C. § 207(e). As stated in *Parth v. Pomona Valley Hospital Medical Center*, 584 F.3d 794, 798 (9th Cir.2009), "The Supreme Court interprets 'regular rate' to mean 'the hourly rate actually paid to the employee for the normal, non-overtime workweek for which he is employed.' *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945)." An employee's regular rate of pay is "properly calculated by adding all of the wages payable for the hours worked at the applicable shift rates and dividing by the total number of hours worked." *Brock v. Wilamowsky*, 833 F.2d 11, 14 (2nd Cir.1987). Thus, employees "who receive incentive bonuses in addition to their guaranteed base pay clearly receive a greater regular rate than the minimum base rate." *Walling v. Harnischfeger Corp.*, 325 U.S. 427, 431, 65 S.Ct. 1246, 89 L.Ed. 1711 (1945).

Plaintiffs argue that the County is violating the FLSA because it does not include the Post–Paramedic or Haz–Mat bonuses in the regular rate that it pays Fire Fighters for working unscheduled shifts in so-called "Regular Fire Fighter positions."[6] Plaintiffs argue that since none of the exceptions specified in § 207(e) is applicable to the Post–Paramedic and Haz–Mat bonuses, these bonuses must be added to the "regular rate" used to determine overtime pay.

The County argues that the so-called Post Paramedic and Haz–Mat "bonuses" are not "bonuses" as that term is defined under the FLSA, and that instead they are part of the monthly salaries of those Item 0199 Fire Fighters who are regularly assigned to Post Paramedic and Haz–Mat positions. According to the County, these "bonuses" (coupled with the "grid salary") are simply used to calculate different "straight time hourly rates" that are paid to Item 0199 Fire Fighters for working in different positions (a practice which is not prohibited by the FLSA). Therefore, according to the County, the "bonuses" need only be included in the hourly "straight time hourly rate" when the pay is for a position to which the bonus applies.

The Department of Labor provides the following guidance on determining the "regular rate":

> The "regular rate" of pay under the Act cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract (*Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 [68 S.Ct. 1186, 92 L.Ed. 1502 (1948) ] ). The Supreme Court has described it as the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed—an "actual fact" (*Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419 [65 S.Ct. 1242, 89 L.Ed. 1705 (1945) ] ). Section 7(e) of the Act requires inclusion in the "regular rate" of "all remuneration for employment paid to, or on behalf of, the employee" except payments specifically excluded by paragraphs (1) through (7) of that subsection.[7] (These seven types

---

**6.** Plaintiffs note that there is no such position as "Regular Fire Fighter." However, as was made clear at the hearing, in this Order the Court uses that term only as a nontechnical means of distinguishing the Plaintiffs who are pursuing this collective action from other fire

fighters (*i.e.*, "Regular Fire Fighters") who are not paramedic or Haz-Mat certified.

**7.** The Act was amended in 2000 to add an additional statutory exclusion to section 7(e), bringing the current number of exceptions to

of payments, which are set forth in § 778.200 and discussed in §§ 778.201 through 778.224, are hereafter referred to as "statutory exclusions.") As stated by the Supreme Court in the *Younger-man–Reynolds* case cited above: "Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary, 'regular rate' in the wage contracts."

29 C.F.R. § 778.108.

■ It is undisputed that the hourly rate "actually paid" to Plaintiffs and other Item 0199 Fire Fighters is included in the "regular rate" that the County uses to calculate overtime. (*See* SUF ¶¶ 83–86.) Plaintiffs nonetheless urge the Court to find that the Post–Paramedic and Haz–Mat "bonuses" must be included in the "regular rate" when calculating overtime— even if the overtime hours actually worked were not performed in a Post–Paramedic or Haz–Mat position. Why, according to Plaintiffs? Because, as the County acknowledges, fire fighters who are paramedic or Haz–Mat certified use their training and skills when working in non-Post Paramedic or Haz–Mat positions. Even if this is so, adding an amount reflecting these bonuses is not required under the FLSA. Aside from its minimum wage requirements, the FLSA does not mandate the rate at which an employer must compensate its employees. Rather, the FLSA requires only that to the extent the employer compensates an employee for his work, such compensation must be included in the regular rate that is used to calculate overtime.

Plaintiffs are correct that certain bonuses may not be excluded from an employee's "regular rate" calculation. However, the Haz–Mat and Post–Paramedic "bonuses" are not "bonuses" as that term is used in the FLSA. The FLSA regulations explain that the term "bonus" is

properly applied to a sum which is paid as an addition to total wages usually because of extra effort of one kind or another, or as a reward for loyal service or as a gift. The term is improperly applied if it is used to designate a portion of regular wages which the employee is entitled to receive under his regular wage contract.

29 C.F.R. § 778.502(a). As discussed above, the "bonuses" at issue here are actually a component of the employee's wages, and are tied to working in a particular position. That is, when a fire fighter has worked in a position for which he is entitled to a bonus (*i.e.,* a Post–Paramedic or Haz–Mat shift), he is paid a premium wage. When a fire fighter has not worked in one of those positions, he is paid a wage that does not include the premium.

Plaintiffs also argue that the Post–Paramedic and Haz–Mat "bonuses" are a type of educational bonus that must be included in their "regular rate." To support this contention, they cite *Featsent v. City of Youngstown,* 70 F.3d 900 (6th Cir.1995) and *O'Brien v. Town of Agawam,* 350 F.3d 279 (1st Cir.2003), in which the Sixth and First Circuits found that certain bonuses paid to employees had to be included in their "regular rate of pay" under the FLSA. The plaintiffs in these cases were police officers who received bonuses for having attained certain educational degrees or accumulating educational credits.

eight *See* Pub.L. 106–202, § 2(a), May 18, 2000, 114 Stat. 308 (Worker Economic Opportunity Act), effective August 17, 2000.

The key fact distinguishing *Featsent* and *O'Brien* from the present case is that in those cases, the educational bonuses were contractually guaranteed compensation in addition to the employees' salaries. Moreover, in neither *Featsent* nor *O'Brien* was the educational bonus tied to the number of hours the employee worked. In *O'Brien*, the bonuses were paid in a single lump-sum that varied depending on the number of credit hours of education that were completed. 350 F.3d at 283 fn. 9. Similarly, in *Featsent*, the bonuses were paid as a lump sum rather than in the form of increased wages. 70 F.3d at 904–05. Nevertheless, in both cases, the employer excluded the educational bonuses entirely from the "regular rate" of pay on which overtime was based. In the present case, by contrast, the Post–Paramedic and Haz–Mat "bonuses" are tied to a particular position worked, and the County does not exclude them from its "regular rate" calculation when the employee has worked in that position. Put another way, these "bonuses" are provided to employees who not merely maintain certification, but who actually work in a post paramedic or Haz–Mat position. (MOU Art 9 § 6.) If an employee fulfills these two requirements, the bonus is included in the "regular rate" determination.

Plaintiffs argue that the County is attempting to impermissibly circumvent the FLSA's overtime pay requirements by hiring Plaintiffs at "one straight pay rate" and paying them at a lower hourly rate "once they cross the threshold from straight pay to overtime pay[.]" (Opp'n at 20.) This is not so. The County pays Plaintiffs at a lower hourly rate if they worked in a non-Post Paramedic or non-Haz-Mat position (*i.e.*, in a "Regular Fire Fighter" position), which they generally do only on unscheduled hours. But this does not mean that the County is setting one hourly rate for non-overtime hours and another for overtime hours, which would violate 29 C.F.R. § 778.316. Although Plaintiffs believe the MOU should be interpreted to require the County to pay the bonuses as an across-the-board salary increase (i.e., regardless of whether the employee has worked in a Post–Paramedic, Haz–Mat, or "Regular" position), the County's refusal to do so does not violate the FLSA.

■ The FLSA does not mandate the hourly rate an employer must pay its employees. The FLSA does not even require an employer to pay a single straight-time hourly rate for all employees performing the same type of work. So long as the differing hourly rates exceed the mandated minimum wage, an employer may pay different employees or the same employee different rates. *Allen v. Board of Pub. Educ.*, 495 F.3d 1306, 1310–12 (11th Cir. 2007). *See also Parth, supra*, 584 F.3d at 802–03 ("Parth also argues that [employer's] pay plan is unlawful, because nurses working both the 8–hour and 12–hour shifts perform the same work, but are paid at different rates. We find no authority that suggests employees cannot be paid different rates for different shifts, and Parth fails to present any authority to the contrary. We do, however, find ample authority from other circuits that supports [the employer's] argument that workers working different shifts may be paid different rates.") (citations omitted).

## B. The Method Used by the County to Calculate the "Regular Rate" does not Violate the FLSA.

■ Plaintiffs also contend that the method used by the County to calculate the "regular rate" violates the FLSA. According to the regulations, the "regular hourly rate of pay of an employee is determined by dividing his total remuneration

for employment (except statutory exclusions) in any [Work Period] by the total number of hours actually worked by him in that [Work Period] for which such compensation was paid." 29 C.F.R. § 778.109. Section 778.109 then goes on to provide "examples of the proper method of determining the regular rate of pay in particular instances."

Section 778.115 sets forth one such example—the "weighted average" method for determining the regular rate of pay where employees are "working at two or more rates" in a given Work Period. This section provides:

> Where an employee in a single [Work Period] works at two or more different types of work for which different non-overtime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that [Work Period] is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.

It is undisputed that the County "pays [Item 0199] Fire Fighters additional premium pay for all hours 'worked' in excess of 192 in the Work Period at the rate of one-half (.5) times the average straight-time hourly rate. The straight time hourly rate is derived by adding all non-overtime earnings (including vacation pay, holiday pay and other pay for time not worked) for the Work Period and dividing the total by the number of hours 'worked' in the Work Period." (SUF ¶ 90.)

In *Parth*, the Ninth Circuit approved the Pomona Valley Hospital Medical Center's ("PVHMC") method of calculating the plaintiffs' "regular rate of pay." The court explained,

> PVHMC calculates the "regular rate" of pay by multiplying the total number of hours Parth works at each of the corresponding base rates (base rate + weeknight base rate + weekend night base rate), adding those numbers together, then dividing the total base rate pay by the total number of base rate hours worked. The "regular rate" of pay is therefore something more than the base rate of pay and will vary according to the number of hours worked at the various base rates. This method is known as the "weighted average method" of determining the "regular rate." *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 596 (2d Cir.2007). After PVHMC calculates the "regular rate" of pay, it multiplies that number by 1.5 to arrive at the overtime rate.

·584 F.3d at 797.

In approving this method of calculating the regular rate of pay, the court in *Parth* cited favorably to decisions in other circuits that approved this method (which is similar to the method used here by the County) to calculate the regular rate of pay. *Id.* at 802. *See also Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 596 (2d Cir.2007) ("This Court has already validated the weighted average method of determining the regular rate, which we described as 'properly calculated by adding all of the wages payable for the hours worked at the applicable shift rates and dividing by the total number of hours worked.'") (quoting *Brock v. Wilamowsky*, 833 F.2d 11, 14 (2d Cir.1987)); *Allen*, 495 F.3d at 1310–11 (finding that the "weighted average" method for calculating regular rate of pay does not violate the FLSA).

Despite the fact that the parties both agree that the method by which the County calculates the "regular rate" is the "weighted average method"—*see* Opp'n at 13; Reply at 16—Plaintiffs argue that

*Rodriguez v. City of Albuquerque*, 687 F.Supp.2d 1270 (D.N.M.2009) compels a different result. Plaintiffs cite that case for this proposition: "The Rodriguez court concluded that when an employee works overtime hours, the employee must receive 1 1/2 times the nonovertime regular rate and not a 'weighted average' or 'a rate determined by all remuneration divided by all hours worked.'" (Opp'n at 14.) Plaintiffs' reliance on Rodriguez is misplaced, however, for a number of reasons.

First, the *Rodriguez* decision is outside the Ninth Circuit and is a district court ruling, and thus is not binding on this Court.

Second, it is difficult to discern precisely on what basis the *Rodriguez* court reached its conclusion. Unlike here, in *Rodriguez* there were several different (and differing) municipal contracts, some of which provided for various types of bonuses and others which did not. 687 F.Supp.2d at 1273–78 (describing various contracts). The examples that the district court used to support its conclusion as to how a "regular rate" was determined included references to "bonuses" without specifying which contract (or contracts) the court was discussing. Nor did the court cite to (let alone discuss) *Parth, Allen, Gorman,* or any other precedent approving the "weighted average method" of calculating the "regular rate."

To provide one example of how *Rodriguez* is distinguishable from the present case, one of City of Albuquerque's practices the court found impermissible was that the City calculated the "regular rate" for its employees by dividing the total compensation received by the employee by the total number of hours that the employee worked (including overtime hours). *Id.* at 1290. The court found this method improper because it resulted in a diminished regular rate as the number of overtime hours increased. However, the reason why this method of calculation resulted in diminished returns was that the "bonuses" the court was considering were lump sum "add-ons." *Id.* at 1291–92. To illustrate the point, the court presented a hypothetical where an employee receives $15.00 per hour and a flat-rate bonus of $50 whenever he or she works in excess of 40 hours in a week. *Id.* at 1290–92. An employee who works 45 hours would receive a total weekly sum of $725 (45 hours × $15/hr + $50.00). *Id.* at 1291–92. The employee's "regular rate" (on which overtime would be based) would be $16.11 ($725 divided by 45 hours). An employee who worked 50 hours would receive a total weekly sum of $800 (50 hours × $15.00 + $50.00), which would result in a diminished "regular rate" of $16.00 ($800 divided by 50 hours). *Id.* This, of course, is the result that "logically follows when one considers that the effect of dividing by the total hours worked is to spread the weekly bonus over an increasingly large number of hours." *Id.* In this case, by contrast, the Post–Paramedic and Haz–Mat "bonuses" are not paid as a lump-sum that is divided amongst the hours worked in a Work Period. Rather, the hourly sums are included in the weighted average method that the County uses to calculate Plaintiffs' regular rate. This method of calculating the regular rate does not result in diminished returns for overtime hours, and does not violate the FLSA. *See Gorman, supra,* 488 F.3d at 596; *Allen,* 495 F.3d at 1310–11.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment.